William C. McNeil, III, State Bar No. 64392
Noah A. Phillips, State Bar No. 306832
The LEGAL AID SOCIETY – EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, CA 94104
Telephone: (415) 864-8848
Facsimile: (415) 593-0096
Emails: wmcneill@las-elc.org
          nphillips@las-elc.org

Howard Moore, Jr., State Bar No. 55228
MOORE & MOORE
1563 Solano Avenue, #204
Berkeley, California 94707-2116
Telephone: (510) 542-7172
Facsimile: (510) 528-3024
Email: moorlaw@aol.com

Attorneys for Plaintiff
BAHAR MIKHAK

# IN THE UNITED STATES DISCTRICT COURT

# FOR THE NORTHERN DISCTRICT OF CALIFORNIA

| | |
|---|---|
| BAHAR MIKHAK, an individual,<br><br>                Plaintiff,<br><br>    v.<br><br>UNIVERSITY OF PHOENIX INC., an<br>Arizona corporation,<br><br>                Defendant. | Case No. 3:16-cv-901<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF FOR:**<br>**(1) EMPLOYMENT DISCRIMINATION PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, *AS AMENDED*; (2) VIOLATIONS OF THE CALIFORNIA FAIR EMPLOYMENTAND HOUSING ACT; AND (3) VIOLATION OF PUBLIC POLICY**<br><br>**[DEMAND FOR JURY TRIAL]** |

**INTRODUCTION**

1.      This action is brought by Plaintiff Bahar Mikhak to secure redress for Defendant's violation of her civil right to be free from employment discrimination on the basis of her religion and her religious practices.

2.      In accordance with her religious beliefs and as part of the exercise of her religion, Ms. Mikhak, an observant Muslim Submitter, must utter the phrase "God willing" while contemplating or planning to do something in the future.

3.      After working for Defendant for a probationary quarter as a faculty candidate, Defendant unlawfully discriminated against Ms. Mikhak by not hiring her to a permanent faculty position for refusing, as a condition of her employment, to stop saying "God willing" in the presence of students.

4.      Defendant unlawfully failed to accommodate Ms. Mikhak's sincerely held religious beliefs.

5.      Defendant unlawfully discriminated against and harassed Ms. Mikhak on the basis of religion by creating a hostile work environment toward Ms. Mikhak.

6.      Defendant retaliated against Ms. Mikhak for complaining about religious harassment by refusing to hire her past the mentorship phase of her employment to a permanent faculty position, *i.e.* to invite her to become a faculty member.

**JURISDICTION**

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331and 1343 in that this case arises under federal law, specifically, Title VII of the Civil rights Act of 1964, *as amended*; § 706(f)(3) of Title VII of the Civil Rights Act of 1964, §42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1343.

8.      This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claims under the California Fair Employment and Housing Act ("FEHA") form part of the same case or controversy under Article III of the United States Constitution.  Plaintiff's state law claims share all common operative facts with her federal law claim, and the parties are identical.  Resolving all state

COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF

and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

## VENUE

9.      Venue is proper in the Northern District of California pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

10.      This action is appropriate for assignment to the San Francisco Division of this Court as the alleged unlawful practices were committed in Alameda County, which is within the jurisdiction of the San Francisco Division.

## PARTIES

11.      Plaintiff BAHAR MIKHAK is a Muslim Submitter female of Iranian descent. In accordance with her religious beliefs and as part of the exercise of her religion as a Muslim Submitter, whenever Ms. Mikhak contemplates doing something in the future, she must remember to say the phrase "God willing."  This belief is derived from a religious command encoded in several verses in the Qur'an (Surah 18, *The Cave*, verses 23-24).

12.      Muslim Submitters believe, as does Ms. Mikhak, that the occasional recital of the phrase "God willing" is not for purposes of proselytizing or converting others; rather, it is a practice they must adhere to as a reminder to humble themselves before an omnipotent God, who is doing everything.  Ms. Mikhak also believes that disobeying this command by failing to invoke the phrase "God willing" when projecting herself into the future, would result in consequences, such as displeasing God.

13.      Ms. Mikhak was employed by the University of Phoenix at its Livermore, California location, where she worked onsite for one quarter as a faculty candidate of one course, from April 28, 2014, until October 13, 2014.

14.      Defendant UNIVERSITY OF PHOENIX INC. ("UOP"), an Arizona corporation, is an academic institution of higher education that provides undergraduate and graduate coursework and degrees at its various campuses throughout the country and through

online programs.  UOP offers flexible scheduling, evening classes, and online courses, among other conveniences, to cater primarily to working adults seeking higher education. UOP employs more than 500 people nationwide and is headquartered in Phoenix, Arizona.

15.     UOP is an employer that is subject to both Title VII of the Civil Rights Act of 1964, *as amended*, and the California Fair Employment and Housing Act.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16.     Ms. Mikhak has exhausted her administrative remedies.  She filed timely administrative charges of discrimination against UOP with the U.S. Equal Employment Opportunity Commission ("EEOC"), which she understands was forwarded to the California Department of Fair Employment and Housing (DFEH) pursuant to a work sharing agreement then in effect.

17.     The parties attempted to settle the matter through an EEOC mediation, which led to no settlement.  Following the mediation, Ms. Mikhak requested a "Right to Sue Letter" be issued by the EEOC, which she received on November 25, 2015.

18.     Ms. Mikhak also received a "Right to Sue Letter" from the DFEH, which was subject to tolling pursuant to California Government Code §12965(d)(1), on or about January 19, 2015.

19.     This action is brought within the time limits established by Title VII of the Civil Rights Act of 1964, *as amended*, and the California Fair Employment and Housing Act.

## STATEMENT OF FACTS

**I.     The Application Process**

20.     On or about September 3, 2013, Ms. Mikhak applied to UOP for a "Faculty Candidate" position.  On or about September 30, 2013, UOP performed background checks and reviewed Ms. Mikhak's college transcripts, and on or about October 14, 2013, UOP interviewed Ms. Mikhak by phone.

21.     UOP's hiring process for faculty is divided into three phases: the Assessment Phase, the Certification Phase, and the Mentorship Phase, the latter being a probationary

period during which the mentee teaches an eight-week course under the supervision of a mentor.  After successful completion of the Mentorship Phase, the mentee is invited to a faculty position.

22.     On or about January 31, 2014, UOP began the "Assessment Phase" of their hiring process, followed by the "Certification Phase."

23.     On or about April 28, 2014, UOP hired Ms. Mikhak to teach the course Research Methods for Mental Health Counselors (CCMH525) at its campus in Livermore, California as part of the "Mentorship Phase."

24.     The CCMH525 course provides an overview of the fundamentals of research and evaluation in the counseling profession.  Subjects included critical analysis of literature, statistics, research methods, needs/program assessment and evaluation.

25.     Ms. Mikhak was well-qualified to teach the course because of her education and experience.  A clinical background in Clinical Psychology was not required to teach this course.  Ms. Mikhak has a Bachelor of Science degree from George Washington University in Biology and Secondary Field in Special Education.  She has a master's degree (M.P.H) in Epidemiology and Biostatistics from the John Hopkins University, Bloomberg School of Public Health. She also has a degree (MS/ABDD) in Genetic and Molecular Epidemiology from the Harvard School of Public Health (HSPH).

26.     She has taught Epidemiology courses onsite and online at various universities in the Bay Area as an assistant professor and as an adjunct faculty member.  She has lectured and led small group sessions for faculty at University of California San Francisco (UCSF).  She has also assisted in teaching the Principles of Epidemiology course, while she was a graduate student at the HSPH.  Currently, she is an adjunct faculty at San Francisco State University (SFSU), teaching her own Epidemiology course (HED 420.01) for the second semester in a row.

27.     On or about January 31, 2014, as part of the "Assessment Phase," *i.e.* the first phase of the application process, before UOP would make an offer of employment to Ms. Mikhak, she and other applicants were required to give a ten-minute teaching demonstration.

COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF

As part of her presentation, Ms. Mikhak shared the findings from a research study investigating a "causal" relationship between contemplating or meditating on God and changes in brain chemistry.  She used the same research question to raise awareness about the distinction between spurious associations and causation.  Although, Dr. Ryan Berman, the College Campus Chair, was not present at the "Assessment Phase," it is possible that he was informed of the candidates' performances and that Ms. Mikhak's slide presentations were forwarded to his attention for evaluation.

28.     On February 28, 2014, on the second week of the "Certification Phase," *i.e.*, the middle phase of the application process, Ms. Mikhak and a few other faculty candidates were required to give another ten-minute teaching demonstration.  During Ms. Mikhak's demonstration, where she used a structured role-play activity, as a learning facilitation technique, to demonstrate the distinction between the interviewer bias and measurement error, Dr. Ryan Berman, the College Campus Chair, attempted to distract her and the evaluators away from Ms. Mikhak's teaching demonstration by abruptly standing up and walking to the door of the classroom.  At first, Ms. Mikhak thought that it is possible that he had to use the bathroom and could not wait for the remaining 10 minutes of her demonstration to be over.  But what he did was puzzling to her because he stood outside, by the door, for the rest of her demonstration, while awkwardly staring at her from the doorway, before leaving the doorway.  He did not return to the classroom to finish evaluating Ms. Mikhak's teaching demonstration.

29.     Although Ms. Mikhak's presentation, during the "Certification Phase," did not include any mention of God or religion, she believes and thereon alleges that Dr. Berman's interruption of her presentation by abruptly leaving was motivated by his bias toward her religious beliefs.

## II.     The Eight-Week Mentorship Phase

30.     On or about August 18, 2014, Ms. Mikhak began the two-month "Mentorship Phase," which consisted of teaching the Research Methods for Mental Health Counselors

COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF

course under the supervision and assistance of a faculty mentor, specifically, Dr. Amanuel Gobena.

31.     On or about August 18, 2014, at the end of the first class of the term, Ms. Mikhak told her students that she would occasionally say "God willing" during class due to her religious beliefs, but she did in no way expect any students to say it, and that the occasional recital of this phrase was not an attempt to proselytize or convert anyone.  After informing the students of this religious practice, Ms. Mikhak remembers all her students (i.e., Maryam, Jenny, Amanda, Gail, Raquel, Karen, and Jonah) pleasantly smiling at her, that one of them (Maryam) even remarked, "[w]e love it when you say God willing," and that no student objected.

32.     On or about August 25, 2014, during the second week of the course, Dr. Berman unexpectedly attended Ms. Mikhak's class without giving proper notice to her or to her mentor, Dr. Amanuel Gobena.  Proper notice would have consisted of an email or phone call and of giving Ms. Mikhak sufficient time to prepare.  Dr. Gobena was offended and Ms. Mikhak felt confused at Dr. Berman's intrusion because he was not supposed to attend a mentee's class without first making arrangements with Ms. Mikhak and her mentor.

33.     Ms. Mikhak wondered if there was something wrong because of Dr. Berman's surprise visit.  Ms. Mikhak is informed and believes and thereon alleges, that Dr. Berman later apologized on two separate occasions to Dr. Gobena for interfering with Dr. Gobena while justifying his unannounced visit by saying he was just trying to "help out."  However, he never apologized to Ms. Mikhak for interfering with Ms. Mikhak's chance to build a trusting relationship with her students.

34.     His interference created a dynamic between Ms. Mikhak and her students where they would run to him if they had any issues instead of coming to Ms. Mikhak directly.

35.      Ms. Mikhak later learned from Dr. Gobena that two students had complained about her lack of clinical background after only attending the session on the first week of classes.  No clinical background was required to teach Ms. Mikhak's course.  Ms. Mikhak

believes that it was perhaps Dr. Berman who had raised her students' expectations because during a meeting she had with Dr. Berman on September 11, 2014, he shared with her that "his language" of counseling or clinical psychology differed from "[Ms. Mikhak's] language".

36.     Ms. Mikhak had to defend why she was qualified to teach a research method course for mental health counselors.  None of the learning objectives for this course on UOP's syllabus that was provided to her involved skills related to seeing mental health patients in the clinic.  Ms. Mikhak felt that she had to convince Dr. Berman that because her research background was in Epidemiology and Biostatics, she was qualified to teach research methods to mental health counselors, without having any background in clinical psychology.

37.     A few days after the second week of classes on August 25, 2014, Ms. Mikhak got a call from Dr. Berman informing her that one of her students was offended by her saying "God willing."  During the same phone conversation, Dr. Berman then asked Ms. Mikhak to stop saying "God willing" in class.  Ms. Mikhak replied that she could not stop saying "God willing" in class because if she did so, she would not be true to her beliefs.

38.     On September 9, 2014, Ms. Mikhak asked Dr. Berman to share the nature and the specific wording of the student's complaint about her saying "God willing," so that she could be in a much better position to address the concern.  But he declined.  Instead of promoting Ms. Mikhak or renewing her contract, UOP insisted that Ms. Mikhak submit to a second mentorship.

39.     Dr. Berman then asked Ms. Mikhak to email him to explain the religious reasons why she was required to and could not stop saying "God willing."

40.     On or about Monday September 8, 2014, the third week of the term, Dr. Berman notified Ms. Mikhak via email that he would attend her class that same day.

41.     Ms. Mikhak felt shocked and immediately called Dr. Berman to remind him that their original plan was for him to visit her class on the fourth week of class and told him that she could not accommodate his visit on such short notice because she had already informed her students of the agenda for the third week of class, and it did not include any

COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF

guest speaker visits.  Dr. Berman then recanted and agreed to comply with their original plan to visit her class on the fourth week.

42.     On or about September 10, 2014, Ms.  Mikhak sent an email to Dr. Berman, where she thanked him for bringing to her attention that a student had complained about her saying "God willing" during class.  She further wrote that she would be willing to give the requested statement explaining why she could not comply with Dr. Berman's demand for her to stop saying "God willing" during class.  But first, she needed to learn more about the "exact nature" of the student's complaint.

43.     Ms. Mikhak was not requesting that the identity of the student be revealed to her; rather Ms. Mikhak was simply requesting to learn what exactly the student had shared with Dr. Berman regarding her use of the phrase.  However, Dr. Berman did not respond to Ms.  Mikhak's email.

44.     On or about September 11, 2014, Ms.  Mikhak and Dr. Berman had a meeting to discuss the class activity he planned to introduce to Ms. Mikhak's students during his visit on the fourth week of class.

45.     Ms. Mikhak attempted to present Dr. Berman with evidence to support why her religion required her to say "God willing," but he remarked that "he was not interested in seeing it" and refused to accept the proof he had formerly requested.

46.     Dr. Berman then stated that he had spoken with UOP attorneys who had told him that UOP's faculty policies prohibited faculty from saying "God willing" in class for fear of being perceived as anti-Semitic.  Ms. Mikhak felt intimidated.

47.     Ms. Mikhak felt that few, if any other, accusations generate such disfavor and opprobrium.  To her, "anti-Semitic" is a loaded phrase.  It is defined as the belief or behavior hostile toward Jews just because they are Jewish.  It may take the form of religious teachings that proclaim the inferiority of Jews, for instance, or political efforts to isolate, oppress, or injure them.  It may also include prejudiced or stereotyped views about Jews.

48.     Dr. Berman then added that he had given Dr. Gobena, Ms.  Mikhak's assigned mentor, a copy of the abovementioned UOP's faculty policies to share with her.  Ms.

Mikhak is informed and believes and thereon alleges that Dr. Gobena never received any document from Dr. Berman outlining these policies.

49.    When Ms. Mikhak later asked her mentor to show her the faculty policies, Dr. Gobena told her that there was no such policy in the faculty handbook and that Dr. Berman had only given him the student's complaint.

50.    Dr. Berman raised offense to Ms. Mikhak and her religious practice amid a captured population consisting of her students, her faculty mentor and colleagues.

51.    Dr. Berman compounded and aggravated the negative impact of UOP's failure and refusal to accommodate Ms. Mikhak's religious beliefs, by suggesting that her religious beliefs, which require her to recite "God willing," were anti-Semitic.

52.    He undermined Ms. Mikhak's standing as a member of UOP's faculty by stereo-typing her as a Muslim or an Iranian who hates Jews.  It was pervasive and touched every aspect of her relationship with UOP and her students.

53.    On or about September 15, 2014, the fourth week of the term, Dr. Berman attended Ms.  Mikhak's class as planned.  However, he stayed about 30 minutes longer than what they had agreed, which took away precious time from completing class activities relevant to the learning objectives for that week.

54.    After Dr. Berman left the class, due to his visit, Ms. Mikhak's students acted more aggressively and were disrespectful towards her for the remainder of the class, which made it difficult for her to regain control of her class.

55.    Ms.  Mikhak is informed and believes and thereon alleges that throughout the term Dr. Berman intermeddled in Ms. Mikhak's relationship with her students, which created an atmosphere of hostility.  For example, after Dr. Berman's visit to her class, Rachael, one of her students, interrupted her lecture to assert that Ms. Mikhak posted too many helpful learning tips on the classroom portal, and then reminded Ms.  Mikhak that Dr. Berman was the College Campus Chair, implying he had power over Ms. Mikhak and that Ms. Mikhak should be intimidated by any students' complaints made to him.

COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF

56.     Based on information and belief, these actions establish that UOP failed to engage with the students on the issue and failed to counsel them regarding the religious accommodation requirement of Title VII.

57.     On or about October 4, 2014, the weekend of the sixth week of the term, Gail, one of Ms. Mikhak's students, informed her that two students, Amanda and Jenny, had approached Gail and had asked her to sign a petition which they had created to pressure and intimidate Ms. Mikhak to stop saying "God willing."

58.     Gail had noticed the pervasive and increasing hostility towards Ms. Mikhak, as evidence from her private message sent to Ms. Mikhak on October 4, 2014, that reads: "Prof Bahar … I know you must be frustrated with the way things are going, but I hope that will not effect [*sic*] you teaching here again. I do not know what the other students have against you, but I have notice [*sic*] somethings [*sic*] that are very disturbing to me. Gail."

59.     Gail, who had exposed those two students, ended up dropping Ms. Mikhak's course right before the last session without UOP informing Ms. Mikhak.  Later, Ms. Mikhak found out that Gail had cited "illness" as the reason.

60.     Also, Ms. Mikhak later found out that Gail was not given permission by UOP to fill out a final evaluation for Ms. Mikhak's course, despite having completed almost 90% of her course.

61.     The UOP's student complaint system allows students to submit a complaint to the Academic Counselor (Ms. Beam), who in turn relates the complaint to the College Campus Chair (Mr. Berman).  As a Muslim Submitter, Ms. Mikhak is commanded by God not to accept any information, unless she verifies it for herself (Qur'an, Surah 17, verse 36). Thus, based on UOP's current model or policy, Ms. Mikhak's religious rights to obtain verification for the complaints were also violated.

62.     The internal investigator at UOP (John Trevor) later shared with Ms. Mikhak that UOP's policy discourages/prohibits the College Campus Chair's (Mr. Berman) office to be in the same location as the academic counselor's office, suggesting that Dr. Berman and Ms. Beam (the Academic Counselor) were in violation of this policy due to their proximity.

63.     Dr. Berman converted Ms. Mikhak's work environment into one which was both objectively and subjective hostile or abusive so she would quit.

64.     On or about October 9, 2014, Dr. Gobena, Ms. Mikhak's mentor, informed Ms. Mikhak of an email that he had received from Dr. Berman.  In this email, Dr. Berman had brought to the attention of Dr. Gobena four bizarre students' complaints against Ms. Mikhak.  In his email, Dr. Berman falsely claimed, that on the seventh week, (the penultimate week of the term), one student had complained that Ms. Mikhak had laughed at a student in a demeaning manner, that students did not feel comfortable in the classroom, that they were worried that Ms. Mikhak would retaliate with grades, and that Ms. Mikhak acted differently when the mentor was present in the classroom.  Dr. Berman had also suggested that Ms. Mikhak's tone was aggressive in emails to students by taking one email exchange between Ms. Mikhak and two of her students (Jenny and Amanda) out of context.

65.     Furthermore, Dr. Gobena later shared with Ms. Mikhak that Jenny and Dr. Berman had some doubts about Ms. Mikhak's grading of Jenny's NAP assignment on the sixth week, but Dr. Gobena never shared what exactly the complaint about her grading consisted of.

66.     Ms. Mikhak certainly found it hostile and abusive.  Under the disguise of "students' complaints," Dr. Berman accused Ms. Mikhak of being a hypocrite—of acting one way in class when she was being observed by her mentor, and differently when she was alone in class.  She felt the need to constantly defend herself from these accusations, which often left her without sufficient energy to attend to her daily affairs.

67.     Ms. Mikhak's thyroid health was negatively impacted.  She avoided friends.  She stopped going out.  Only her faith in God and submission to His will prevented her from staying in grief and depression.  Any reasonable person subjected to the discriminatory conduct would find, as she did, that the harassment altered her working conditions by "making it more difficult to do the job."

68.     On or about October 9, 2014, Dr. Gobena forwarded the abovementioned email to Ms. Mikhak, and asked her to write a response to the accusations.  Also, Dr.

COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF

Gobena wrote a very compelling and extensive refutation of these bizarre complaints to Dr. Berman, which he later forwarded to Ms. Mikhak.

69.     Dr. Gobena's responsive email to Dr. Berman stated:  "Dear Dr. Berman, First of all it is very difficult to deal with subjective accusations and coming to a conclusion.  And secondly I was not in class and is [*sic*] difficult for me to give full account of your concerns. I can only rely on my observations while I was in class and with the time i [*sic*] spent with Dr. [*sic*] Bahar."

70.     Dr. Gobena added:  "I spent about 6 to 10 hours off campus with Dr [*sic*] Bahar in Star bucks [*sic*] in preparation for the class.  Very knowledgeable and eager to learn the system and share her knowledge with her students."

71.     Dr. Gobena also wrote:  "I have watched her close to 10 hours in class at three separate occasions and never observed her "demeaning."  The faculty is very approachable, gregarious, professional and eager to share her knowledge.  Kept the class rigor at a very high standard."

72.     He then added:  "Her feed backs [*sic*] to her students (which I will enumerate in her evaluations) are very detailed and students can learn immensely from the feedback. Sometimes students don't read the feedback but keep on asking questions.  Please have a look at the week 6 graded material as an example.  In reality i [*sic*] have seen very few detailed feedback like this in the past.  Unique capabilities in making and providing and bringing some unique ideas to the class.  Her lecture slides are unique in helping students' understanding of the concepts."

73.     More of the email from Dr. Gobena to Dr. Berman stated:  "I have been working with the success coach all along to find solutions to any problem that the student had and we have been successful to most extent [*sic*] and yet you have forwarded some students concern that are subjective in nature. For example faculty tone, capital letters, etc."

74.      Dr. Gobena further commented in the email: "Retaliation doesn't have any place within this University.  This is [a] baseless accusation.  We have to evaluate our students objectively."

COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF

75.     Dr. Gobena concluded the email writing the following:  "With that I have come to a conclusion that I will not take any assignment from this college in the future if interference, if questioning my judgment and my professionalism is the norm.  I have never experienced such a process in my 16 years of serving this University.  It is not good for the students nor [*sic*] the faculty either."

## III.   The Interim and Final Mentorship Evaluations

76.     On or about October 13, 2014, the eighth week and last day of class, as part of Ms.  Mikhak's performance assessment, her mentor, Dr. Gobena, was supposed to attend Ms. Mikhak's session and take the final exam, along with her students, in order to assess it as part of his final evaluation of Ms. Mikhak.  Instead, Dr. Berman attended the last day of class and took the final exam, which was an open book, open notebook, open laptop, open internet final exam with two hours to complete.  Ms. Mikhak was never made aware of the switch and only learned of it that same day.  Dr. Berman later approved Ms. Mikhak's final exam as "reasonable."

77.     More importantly, throughout the "Mentorship Phase," Dr. Berman only observed students' class presentations.  He did not get to observe Ms. Mikhak's instructional presentations in order to qualify him to evaluate her teaching.

78.     Dr. Gobena, Ms.  Mikhak's mentor, had attended three of her classes and spent hours mentoring Ms.  Mikhak outside of class.  Dr. Gobena had submitted positive and commending written evaluations of Ms. Mikhak's ability as a teacher for each time she attended her class.

79.     On or about October 16, 2014, Dr. Gobena submitted a final evaluation, where he recommended to the Director of Academic Affairs, Dr. Cathy Malone, to "[i]nvite mentee to become a faculty member."

80.     On or about October 21, 2014, Dr. Berman submitted his own evaluation of Ms. Mikhak's performance as a mentee although he was not qualified to evaluate Ms. Mikhak's performance because he had never attender her class to observe her teaching.

COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF

81.     Ms. Mikhak is informed and believes and thereon alleges that religious discrimination motivated Dr. Berman's negative evaluation of her and caused Dr. Malone to deny her a position as a faculty member.  Ms. Mikhak is informed and believes and thereon alleges that religious discrimination motivated Dr. Berman to influence Dr. Malone to ultimately deny Ms.  Mikhak a faculty position.

82.     On or about November 5, 2014, Ms. Mikhak received a letter from Dr. Malone offering her a second mentorship position instead of a faculty member position.

83.     Ms. Mikhak then emailed Dr. Malone asking whether she could appeal the decision.

84.     Dr. Malone responded via email that there was no process for appeal and stated that "[the mentorship] offer is my recommendation based on my review of all of the reports, your emails, your response to feedback from [Dr. Berman], and the numerous student issues that arose during the class."

85.     Ms. Mikhak and Dr. Malone then exchanged five more emails, spanning 96 pages, throughout which Ms.  Mikhak pleaded her case to Dr. Malone as to why she should have been offered a faculty position and that Dr. Berman's evaluations and accusations were baseless and retaliatory.

## DECLARATORY RELIEF ALLEGATIONS

Plaintiff Mikhak incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 85, above.

86.     An actual controversy exists between the Plaintiff and the Defendant concerning their respective rights and duties.  Plaintiff contends that Defendant willfully violated her rights under Title VII, the California Fair Employment and Housing Act.

87.     Plaintiff is informed and believes, and based thereon alleges, that the Defendant denies that these actions were unlawful.  Declaratory relief is therefore necessary and appropriate.

88.     Plaintiff seeks a judicial declaration of the rights and duties of the respective parties, including a declaration of Defendant's duty to comply with the law.

## INJUNCTIVE RELIEF ALLEGATIONS

89.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 88, above.

90.     No previous application for the injunctive relief sought herein has been made to this Court.

91.     If this Court does not grant the injunctive relief sought herein, Plaintiff will be irreparably harmed.

92.     No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

## FIRST CLAIM FOR RELIEF

*Unlawful Discrimination on the Basis of Religion in Violation of Title VII*

93.     Ms. Mikhak repeats and re-alleges the allegations set forth in Paragraphs 1 through 92 as though fully set forth herein.

94.     Defendant's conduct as herein alleged violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), which makes unlawful discrimination against employees on the basis of religion.  The term "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

95.     Defendant discriminated against Ms. Mikhak in violation of Title VII when it did not invite her to become a faculty member because she said "God willing" during class and because she refused to stop saying "God willing."

96.     As a proximate result of Defendant's discriminatory actions, Ms. Mikhak has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.  As a result of those actions and consequent harms, Ms. Mikhak has suffered such damages in an amount to be proved at trial.

97.     Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Mikhak's rights.

98.     Ms. Mikhak requests relief as described in the Prayer for Relief below.

//

## SECOND CLAIM FOR RELIEF

*Unlawful Failure to Accommodate Religious Beliefs in Violation of Title VII*

99.    Ms. Mikhak repeats and re-alleges the allegations set forth in Paragraphs 1 through 98 as though fully set forth herein.

100.    Defendant's conduct as herein alleged violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(j), which requires an employer to "accommodate" religious practices and beliefs.

101.    Defendant acted in violation of Title VII when, rather than initiating steps towards accommodating her religious practice, Defendant demanded that Ms. Mikhak stop saying "God willing," out of the fear of being perceived as "anti-Semite," and when it subsequently did not offer her a faculty position because she said "God willing."

102.    Accommodating Ms. Mikhak's religious practice would not have caused Defendant undue hardship.

103.    As a proximate result of Defendant's discriminatory actions, Ms. Mikhak suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.  As a result of such actions and consequent harms, Ms. Mikhak has suffered such damages in an amount to be proved at trial.

104.    Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Mikhak's rights.

105.    Ms. Mikhak requests relief as described in the Prayer for Relief below.

## THIRD CLAIM FOR RELIEF

*Hostile Work Environment Based on Religion in Violation of Title VII*

106.    Ms. Mikhak repeats and re-alleges the allegations set forth in Paragraphs 1 through 105 as though fully set forth herein.

107.    Defendant's conduct as herein alleged violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), which makes it unlawful for an employer to subject an employee to severe and pervasive workplace harassment based on religion  that results in a hostile and intimidating workplace environment.  The phrase "God willing" (*Insha'Allah* in

Arabic) is a common phrase used in the Muslim world and in Ms. Mikhak's native Iran, from where she immigrated to the United States.  Defendant was aware that Ms. Mikhak was and is a practicing Muslim, originally from Iran.

108.    Defendant subjected Ms. Mikhak to severe and pervasive workplace harassment based on religion and national origin in violation of Title VII when it required her to stop saying "God willing," when it requested that she provide proof as to why her religion required her to say the phrase, when she was told that saying the phrase could be perceived as anti-Semitic, when Dr. Berman would come to her class without giving her proper notice, when Dr. Berman's continuous involvement with Ms. Mikhak's students empowered them to be disruptive in her lectures and create a petition to force Ms. Mikhak to stop saying "God willing," when Dr. Berman influenced Dr. Malone to deny Ms. Mikhak a faculty position, and when ultimately Defendant denied her a faculty position.

109.    The severe and pervasive harassment that Defendant subjected Ms. Mikhak to was unwelcome and unwanted. A reasonable person in Ms. Mikhak's position would have perceived Defendant's conduct as hostile, and Ms. Mikhak did in fact perceive it as such.

110.    Defendant knew of should have known of the harassment, yet failed to take immediate and appropriate corrective action, despite its ability and authority to do so.

111.    As a proximate result of Defendant's discriminatory actions, Ms. Mikhak has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.  As a result of such actions and consequent harms, Ms. Mikhak has suffered such damages in an amount to be proved at trial.

112.    Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Mikhak's rights.

113.    Ms. Mikhak requests relief as described in the Prayer for Relief below.

## FOURTH CLAIM FOR RELIEF

*Retaliation in Violation of Title VII*

114.    Ms. Mikhak repeats and re-alleges the allegations set forth in Paragraphs 1 through 112 as though fully set forth herein.

115.     Defendant's conduct as herein alleged violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), which makes it unlawful for an employer to retaliate against an employee for complaining about unlawful discrimination, harassment, and failure to accommodate.

116.     Defendant retaliated against Ms. Mikhak in violation of Title VII when it did not offer her a faculty position because she complained of unlawful discrimination and harassment.

117.     Defendant's retaliatory conduct would have dissuaded a reasonable person from exercising rights protected by Title VII.

118.     As a proximate result of Defendant's discriminatory actions, Ms. Mikhak has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.  As a result of such actions and consequent harms, Ms. Mikhak has suffered such damages in an amount to be proved at trial.

119.     Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Mikhak's rights.

120.     Ms. Mikhak requests relief as described in the Prayer for Relief below.

### FIFTH CLAIM FOR RELIEF

*Unlawful Discrimination on the Basis of Religion in Violation of the California Fair Employment and Housing Act*

121.     Ms. Mikhak repeats and re-alleges the allegations set forth in Paragraphs 1 through 118.

122.     Defendant's conduct as herein alleged violated the California Fair Employment and Housing Act, which makes it an unlawful employment practice for an employer to discharge or discriminate against an employee in the terms, conditions, and privileges of employment because of her religion.  Cal. Gov't Code § 12940.

123.     Defendant discriminated against Ms. Mikhak in violation of FEHA when Defendant did not invite her to become a faculty member because she said "God willing" during class and refused to stop saying "God willing."

124.   As a proximate result of Defendant's discriminatory actions, Ms. Mikhak has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.  As a result of such actions and consequent harms, Ms. Mikhak has suffered such damages in an amount to be proved at trial.

125.   Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Mikhak's rights.

126.   Ms. Mikhak requests relief as described in the Prayer for Relief below.

### SIXTH CLAIM FOR RELIEF

*Unlawful Failure to Accommodate Religious Beliefs in Violation of the California Fair Employment and Housing Act*

127.   Ms. Mikhak repeats and re-alleges the allegations set forth in Paragraphs 1 through 124 as though fully set forth herein.

128.   Defendant's conduct as herein alleged violated the California Fair Employment and Housing Act, which makes it an unlawful employment practice for an employer to discharge or discriminate against an employee in the terms, conditions, and privileges of employment because of her religion.  Cal. Gov't Code § 12940.

129.   Defendant violated FEHA when, rather than initiating steps toward accommodating her religious practice, Defendant did not invite Ms. Mikhak to become a faculty member because she said "God willing," out of the fear of being perceived as "anti-Semitic" during class, and because she refused to stop saying "God willing."

130.   Accommodating Ms. Mikhak's religious practice would not have caused Defendant an undue hardship.

131.   As a proximate result of Defendant's discriminatory actions, Ms. Mikhak has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.  As a result of such actions and consequent harms, Ms. Mikhak has suffered such damages in an amount to be proved at trial.

132.   Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Mikhak's rights.

COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF

133.    Ms. Mikhak requests relief as described in the Prayer for Relief below.

## SEVENTH CLAIM FOR RELIEF

*Hostile Work Environment on the Basis of Religion and in Violation of the California Fair Employment and Housing Act*

134.    Ms. Mikhak repeats and re-alleges the allegations set forth in Paragraphs 1 through 131 as though fully set forth herein.

135.    Defendant's conduct as herein alleged violated the California Fair Employment and Housing Act, which makes it unlawful for an employer to engage in harassment based on religion and obligates it to take every reasonable step to avoid religious discrimination and to take immediate effective remedial action upon learning of religious harassment conduct of an employee or agent.  Cal. Gov't Code § 12940.

136.    Defendant subjected Ms. Mikhak to severe and pervasive workplace harassment based on religion in violation of FEHA when it required her to stop saying "God willing," when it requested that she provide proof as to why her religion required her to say the phrase, when she was told that saying the phrase could be perceived as anti-Semitic, when Dr. Berman would come to her class without giving her proper notice, when Dr. Berman's continuous involvement with Ms. Mikhak's students empowered her students to be disruptive in her lectures and create a petition to force Ms. Mikhak to stop saying "God willing," when he influenced Dr. Malone to deny Ms. Mikhak a faculty position, and when Defendant ultimately denied her a faculty position.

137.    The severe and pervasive harassment that Defendant subjected Ms. Mikhak to was unwelcome and unwanted.  A reasonable person in Ms. Mikhak's position would have perceived Defendant's conduct as hostile, and Ms. Mikhak did in fact perceive it as such.

138.    As a proximate result of Defendant's discriminatory actions, Ms. Mikhak has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.  As a result of such actions and consequent harms, Ms. Mikhak has suffered such damages in an amount to be proved at trial.

COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF

139.    Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Mikhak's rights.

140.    Ms. Mikhak requests relief as described in the Prayer for Relief below.

## EIGHTH CLAIM FOR RELIEF

*Retaliation in Violation of the California Fair Employment and Housing Act*

141.    Ms. Mikhak repeats and re-alleges the allegations set forth in Paragraphs 1 through 137 as though fully set forth herein.

142.    Defendant's conduct as herein alleged violated the California Fair Employment and Housing Act, which makes it unlawful for an employer to retaliate against an employee for complaining about unlawful discrimination, harassment, and failure to accommodate.  Cal. Gov't Code § 12940.

143.    Defendant retaliated against Ms. Mikhak in violation of FEHA when it did not offer her a faculty position because she complained of unlawful discrimination and harassment.

144.    As a proximate result of Defendant's discriminatory actions, Ms. Mikhak has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.  As a result of such actions and consequent harms, Ms. Mikhak has suffered such damages in an amount to be proved at trial.

145.    Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Mikhak's rights.

146.    Ms. Mikhak requests relief as described in the Prayer for Relief below.

## NINTH CLAIM FOR RELIEF

*Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of the California Fair Employment and Housing Act*

147.    Ms. Mikhak repeats and re-alleges the allegations set forth in Paragraphs 1 through 143 as though fully set forth herein.

148.    Defendant's conduct as herein alleged violated the California Fair Employment and Housing Act, which imposes a duty on an employer to take all reasonable

steps necessary to prevent discrimination, harassment, and retaliation from occurring.  Cal. Gov't Code § 12965(k).

149.    Defendant's failed to take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring against Ms. Mikhak when it did not invite her to become a faculty member, when it did not address students' petition to force her to stop saying "God willing" in class, when it did not allow Ms. Mikhak to verify the student's complaints, which attacked her integrity and character, when it did not honor Ms. Mikhak's request to provide a mediation session between her and her students, who had made a complaint, when it would not give an opportunity to the faculty candidate to explain her perspective of what happened and only honored a few of students' perspectives, and when it qualified Dr. Berman's bogus Interim Mentorship Evaluation to contribute to the decision of whether or not to employ Ms. Mikhak.

150.    As a proximate result of Defendant's discriminatory actions, Ms. Mikhak has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.  As a result of such actions and consequent harms, Ms. Mikhak has suffered such damages in an amount to be proved at trial.

151.    Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Mikhak's rights.

152.    Ms. Mikhak requests relief as described in the Prayer for Relief below.

## TENTH CLAIM FOR RELIEF

*Unlawful Discrimination and Retaliation in Violation of Public Policy*

153.    Ms. Mikhak repeats and re-alleges the allegations set forth in Paragraphs 1 through 149 as though fully set forth herein.

154.    Defendant's conduct as herein alleged violated the public policy articulated by the California Fair Employment and Housing Act, Government Code §§ 129000, *et seq*., and Title VII of the Civil Rights Act of 1964, both prohibiting discrimination in the workplace based on an employee's religion, and Article 1, Section 8 of the California Constitution, prohibiting discrimination in employment based on, creed or religion.

COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF

155.     Defendant discriminated and retaliated against Ms. Mikhak in violation of FEHA, Title VII and Article 1, Section 8 of the California Constitution when it did not invite her to become a faculty member because she said "God willing" during class and refused to stop saying "God willing."

156.     As a proximate result of Defendant's discriminatory actions, Ms. Mikhak has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.  As a result of such actions and consequent harms, Ms. Mikhak has suffered such damages in an amount to be proved at trial.

157.     Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Mikhak's rights.

158.     Ms. Mikhak requests relief as described in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Mikhak requests that this Court:

1.     Enter a declaratory judgment that the practices complained of in this complaint are unlawful and violate Title VII of the Civil Rights Act of 1964 and the California Fair Employment and Housing Act;

2.     Grant all injunctive relief necessary to bring Defendant into compliance with the aforementioned laws;

3.     Order Defendant to pay the wages, salary, employment benefits, and other compensation denied or lost to Ms. Mikhak to date by reason of Defendant's unlawful actions, in amounts to be proven at trial;

4.     Order Defendant to pay compensatory damages for Ms. Mikhak;

5.     Order Defendant to pay exemplary and punitive damages;

6.     Order Defendant to pay attorneys' fees and costs of the action;

7.     Order Defendant to pay pre- and post-judgment interest; and

8.     Grant any further relief that the Court deems just and proper.

//

//

Dated this 23 day of February, 2016

Respectfully submitted,
William C. McNeill, III
Noah Phillips
The LEGAL AID SOCIETY -
EMPLOYMENT LAW CENTER

Howard Moore, Jr.
MOORE & MOORE

By: ___/s/   Noah Phillips_____
NOAH PHILLIPS
Attorneys for Plaintiff

COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF

1

## JURY TRIAL DEMAND

2        Ms. Mikhak hereby demands a jury trial on all issues so triable.

3  Dated this 23 day of February, 2016        Respectfully submitted,

4                                    William C. McNeill, III

5                                    Noah Phillips

                                    The LEGAL AID SOCIETY -

6                                    EMPLOYMENT LAW CENTER

7                                    Howard Moore, Jr.

                                    MOORE & MOORE

8

9                        By: __/s/_ Noah Phillips_____

10                            NOAH PHILLIPS

                            Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28